13-1373 Moses Williams v. Cindi Curtin Oral argument, 15 minutes per side. Ms. Taylor for the appellant. I'd like to reserve 3 minutes rebuttal time please. You may, please proceed. May it please the court, my name is Charlotte Taylor, counsel for appellant Moses Keyon Williams. The trial court in this case excluded Mr. Williams' alibi witness after she missed a prosecution-created deadline by 51 minutes. The sole reason the trial court gave was that, quote, this is the time to pick a jury. This exclusion clearly prejudiced Mr. Williams in a case in which no physical evidence linked him to the crime, and there were significant problems with the sole eyewitness' identification of him. In all fairness, that's a little bit minimizing what happened here, isn't it? There's a state rule, it's a 10-day rule, that had already been extended, and granted the prosecution in their agreement to extend it set a deadline, and it is true that that deadline wasn't met but only by 51 minutes, but even at that, there was still no way for the police to contact, or the prosecution to contact this alleged alibi witness. Am I right about that? Well, the record, I mean, certainly the alibi notice was given 6 days late, 4 days before trial, and Ms. Peters did not have a telephone. However, at the 4 days before trial, the prosecution was in possession of her full name, her date of birth, her city of residence, all of which is more information than the Michigan notice of alibi statute actually requires. The defendant had also been arrested in Columbus, Ohio, and extradited from there, so the Michigan authorities had worked with the Columbus authorities previously. I don't think that there was no way to investigate her statement. It was simply a matter of whether the prosecution had the opportunity that they had hoped for to interview her via telephone. But the defense was also making concerted efforts to continue to try to cooperate with the prosecution. The witnesses, the defendant's family, had been in constant communication with the prosecution, and they were in the process of trying to work out a solution. I don't see that on the record. Is that contained in the record or in the briefs? The efforts of the defendant's family to cooperate with the prosecution? Yes. They state that this is, I'm referring to R8-8, page number 552. The defense counsel informed the court, this is on the morning of the trial was set to begin, that the defendant's family had made attempts Friday and over the weekend to speak with Sergeant Besson, and at some point the client's mother had actually spoken with the investigator and tried to continue to work out a solution. And to what do we make of that? I think there are two things to make of that. First, there shows an absence of willfulness on the defendant's part, and also I think it shows that the defense was trying its hardest to mitigate any possible prejudice to the prosecution. I think that the question for the trial court at that stage was what sanction is proportionate to, what prejudice has the prosecution actually suffered, and what sanction is proportionate to that? Now, there were a number of alternative sanctions that the trial court could have imposed. The trial court could have, for example, directed that Ms. Peters not be allowed ultimately to testify unless the prosecution did succeed in interviewing her. That's not a right that the prosecution normally enjoys, but the trial court could have imposed that as a sanction. The trial court could have circumscribed her testimony in ways that were proportionate to whatever difficulties the prosecution actually had in investigating. The trial court could have allowed a wide-ranging cross-examination. The trial court could have done any number of things that would have been less severe than total preclusion, which is the severest sanction, as this court recognized in forensic, and the Supreme Court also has stated in Taylor v. Illinois and Michigan. Well, that's true, but we all understand the constraints of AEDPA, or at least we try to, and viewing this case through the AEDPA lens, when you look at Taylor's clearly established law, that doesn't even suggest that the court has to pursue alternative sanctions, as you're persuasively arguing here. Well, I think that the clearly established rule that we would be applying under AEDPA review is that the exclusion of material witness testimony pursuant to a state evidentiary rule can't be arbitrary and disproportionate to the purposes that the rule is designed to serve. Now, Taylor also makes clear that the court must balance the defendant's fundamental right to present testimony in his favor against a number of other interests, including the need to protect, generally, the integrity of the adversary process. And this court also recognized... I don't understand why the balancing, I think, three factors in Taylor, in your opinion, is at odds with the Travis factors. There are three primary reasons for that, Your Honor. First, the Travis factors make no mention whatsoever of the defendant's right to put on testimony or evidence, and Taylor is very clear. It states, it is elementary that the trial court may not ignore the defendant's fundamental right to present a defense. Second, as forensic held, Taylor and Lucas instruct that the severity of the exclusion sanction is an important factor in proportionality review. And the test, the Travis factors, nowhere take account of proportionality or the severity of the sanction imposed. Why isn't it implicit that that was recognized here by not enforcing the 10-day rule and, in fact, allowing them to call this witness if they had merely given the ability to contact this witness up until 3 o'clock, I think it was the day before trial, wasn't it? That's correct. So how could it not be implicit that they were recognizing you just can't arbitrarily cut something off, in this case, 10 days in advance? Well, again, the notice had been given as of four days before trial, so the relevant constitutional question for the trial court was, under those circumstances, what's an appropriate sanction to remedy any prejudice to the defense and otherwise, to the prosecution and otherwise address this alibi? Excuse me, counsel, this is Judge Daughtry. I'm wondering if your statement that notice had been given four days before trial overstates the case a little. It was my impression that all that was said then was that we have an alibi witness that we're having trouble contacting. Well, respectfully, Your Honor, I disagree. I think that what was said then was we plan to call an alibi witness. They gave her full name, Cassa Peters. They gave her date of birth and her city of residence. The Michigan Notice of Alibi Statute only requires, in fact, that the name of the alibi witness be given and that a brief statement of the nature of her testimony. That was also provided to the court at that time. The defense explained that the alibi was that defendant was in Columbus, Ohio, from the 1st to the 11th of the month at which the crime had been committed. If I could return to the third reason why the Travis factors are contrary to clearly established federal law, the Travis factors directed the court to consider other evidence against the defendant in the balance. This is not a factor that the Supreme Court has ever approved in this context, and, in fact, in Holmes v. South Carolina, the Supreme Court explained that a rule that the defendant cannot present exculpatory evidence because the prosecution has put on strong forensic evidence is as illogical, this is how the court put it, as a rule that the prosecution cannot put on a case because the defendant has some exculpatory evidence. Is that not about the balancing, though? I'm struggling with seeing how there's not some overlap between Travis and Taylor. Without question, they do emphasize a different angle on the same question, but I'm struggling as to whether we can say that that is truly at odds with established law. Well, I think that if one of the factors that the Supreme Court has instructed you cannot ignore is the defendant's right to present testimony, and the state applies a non-constitutional five-factor test that doesn't even list the defendant's right to present testimony as one of the relevant factors, that's one indication. It doesn't name it, it names relevant factors arising from the circumstances of the case. I'm just struggling with the actual application. When you see those applied, do you not think that there's some overlap? I think that certainly there are some factors that one would consider both under Travis and under Taylor, but I don't believe that. I think that the fact that the defendant's interest in presenting exculpatory testimony, which the Supreme Court recognized in Taylor is a very weighty interest, is completely excluded from the factors, and also the fact that Travis directly instructs courts to consider the weight of the evidence against the defendant, which the Supreme Court found in Holmes was an illogical type of reasoning to engage in. And then thirdly, the fact that this test, the Travis test, nowhere acknowledges the severity of the exclusion sanction, which is something that the Supreme Court explicitly acknowledged in Taylor, and that this court also acknowledged in its decision in forensic. What impact on our consideration is it that there is no affidavit or other evidence in the record as to what this alibi witness would have specifically said? Well, I think that there's specific, the defendant gave specific notice that she would testify that he was, sorry, Ms. Peters would testify that the defendant was with her in Columbus, Ohio for specific dates, and that he did not leave to go to Michigan. Is that or is her message that she left that I would testify that during a certain time frame, the defendant was with me, it was a very limited and cryptic message. Well, what the record... Wouldn't you concede that? I'm sorry. Wouldn't you concede that it was a very limited and cryptic message that she left on the telephone for the officer? Well, I would not concede that because all that we know from the record about the actual telephone message was the investigator's paraphrase of it as represented to the court by the prosecution. So they did state that... Counsel, isn't that the problem, though? We don't have a proffer of any kind. One of the things that could have happened is the attorney, the trial attorney, defense attorney, could have asked for a chance to put on the record what she was going to say, and as a matter of fact, she wasn't there, so you couldn't offer her as to what she was going to say. But you could have excused the jury and asked the defendant to put on the record what it is that he thought she could testify to if she were there. I mean, we can't really be sure there even is a Ms. Peters or whatever her name is. There's no way to prove who that was that left the telephone message, is my point. The whole thing is so ethereal. Well, the prosecution didn't argue that Ms. Peters didn't exist or that her testimony was fabricated. No, I'm sorry. I apologize for saying that then. But the point is there isn't anything definite in the record, a proffer of any kind, as to what she would present if she were there to testify, and the point is she wasn't there. Well, I think that at that point it was the trial court's duty, it was in determining what sanction to impose to rather... I mean, the trial court immediately summarily excluded... You don't think the attorney had any responsibility for making a proffer? Pardon? Well, I think the attorney was attempting to work with the prosecution to establish a foundation for Ms. Peters' testimony, and the trial court excluded... The answer you're giving me is no. Pardon? The answer you're giving me is no. I think that the defense counsel did have a duty to try to make a proffer, but that the defense counsel was trying to fulfill that duty by attempting to work with the prosecution and get this testimony into the record. Well, I guess we're down now to quibbling about what a proffer actually is, so you continue. All right. Thank you, Ms. Taylor. Your red light's on. You'll have your rebuttal. Okay. Good morning. My name is Catherine Delzel. I'm here on behalf of Respondent Cindy Curtin. May it please the court, I'd like to focus today on two reasons why this court should affirm the denial of Mr. Williams' habeas petition. The first is that there was no clearly established requirement here for the trial court to consider or impose a lesser sanction, and the second reason is that even if there were, that's exactly what the state courts did here. A brief note with respect to the standard of review. This is a habeas case out of the state of Michigan, meaning that Mr. Williams must go through the Harrington v. Richter framework. He's required to show an extreme malfunction in the state criminal justice system. Well, your opposing counsel argues that if the Travis factors that were applied are contrary to established Supreme Court law in Taylor, then Williams is entitled to de novo review. Why is that not correct? Because in the language of Harrington v. Richter itself, it does not limit the Richter standard of no fair-minded jurist to the unreasonable application prong of 2254. It also applies to the contrary-to prong of 2254. So unless no fair-minded jurist could conclude that the state court decision here was contrary to clearly established Supreme Court precedent, epidefference applies, and this court must review. And that's the question. That's my question. If Travis is clearly at odds with the constitutional analysis of Taylor, then doesn't this defendant get de novo review? If that were the case, yes, but we would argue that it wasn't the case. Explain to me why. There is a difference. I see an overlap. I think there's no question there's an overlap in the analysis. But your opposing counsel has pointed out that there is a failure to consider the right to present a defense as one of the components of the Travis analysis. And Travis, in fact, was pre-Taylor. That's correct. So why is there—what's wrong with her argument? I have a couple of responses to that. The first is that in order to show that the state court's decision was contrary to clearly established Supreme Court precedent, it can't—Williams can't just show that the test was different. He has to show that it was opposite in character, diametrically different, or mutually opposed to clearly established Supreme Court precedent. And the trial court—or the Michigan Court of Appeals, rather, expressly noted here that the deadline had been extended. So they expressly considered the fact that a lesser sanction was imposed. And the court also did consider his right to present a defense. The Court of Appeals noted that Williams was not denied the opportunity to put on an alibi defense and that he could have testified himself. And it also noted that the prosecution had been precluded from commenting on his lack of corroborating witnesses. Now, it's true that this put Williams in the position of having to make a strategic decision whether to take the stand and testify, but that's true in every criminal case. And as Your Honor noted during the previous argument, the people versus Travis factors, we do not dispute that that's a defunct test, but those factors did overlap significantly with the Taylor factors that the Supreme Court articulated. One of the things that the Travis test asks is what the amount of prejudice was from the failure to disclose. That tracks the Taylor test. The Travis test also instructs the court to consider the reason for the late disclosure. In other words, whether it was willful. That tracks the Taylor test. The Travis test also instructs the court to consider the extent to which the harm was mitigated. In other words, was the prejudice perpetuated? That tracks the Taylor test. So, in short, because the Michigan Court of Appeals expressly considered that a lesser sanction was imposed here, and they expressly considered Williams' right to present a defense, as well as the Travis factors, which tracked the Taylor test pretty significantly, it just can't be said here that the Michigan Court of Appeals' decision was, quote, opposite in character to clearly establish Supreme Court precedent, or diametrically different from it, or mutually opposed to it. And we would also go back to the question of whether there's a clearly established rule at all from Taylor or Lucas of the sort that Mr. Williams is advocating, and we would submit that there wasn't. To the extent that Taylor clearly establishes anything, it is a broad multi-factor analysis that leaves trial courts broad discretion to make decisions based on a number of amorphous considerations, including the integrity of the adversary process, the interest in the fair and efficient administration of justice, the potential prejudice to the truth-determining function of the trial process, how simple it is to comply with the rule, the explanation for the violation, and willfulness. And both Taylor and Lucas expressly declined to create any sort of categorical rule. In Taylor, the court noted that it is not necessary or appropriate for the court to draft a comprehensive set of standards to guide the exercise of discretion in every possible case. The court in Lucas also declined expressly to create a categorical rule. Even in the Lucas case where the record... that just because you don't... it's not per se unconstitutional to have a notice rule. It says that that doesn't mean that all notice requirements pass constitutional muster, correct? That's correct. So hence the balancing. So you would concede we've got to balance those interests, and your position is that they were appropriately balanced here. Well, my position, I would agree that they were appropriately balanced here, but with respect to Lucas, it's noteworthy that even in Lucas where the record demonstrated clearly that the prosecution had not been surprised by the late evidence and that there was no evidence of willfulness, the Supreme Court still declined in that case to rule on whether preclusion was a necessary or was an appropriate sanction, and expressly left that to the discretion of the state courts. Now, with respect... am I missing something here? Didn't the Supreme Court really disavow the construction that's being advanced here about Lucas and Nevada v. Jackson? Yes, in Nevada v. Jackson, the Supreme Court essentially gutted any sort of categorical rule that could be inferred from Lucas, and it's noteworthy to look at the situation in Nevada, which was the Supreme Court reversed the Ninth Circuit for inferring a categorical rule from Lucas. In that case, the Nevada Supreme Court had upheld the evidence based on a violation of a notice rule, and the Ninth Circuit granted habeas relief based on Lucas in an analysis that looks quite similar to what Mr. Williams is arguing here. But the Supreme Court reversed the Ninth Circuit, and it said... it first noted that the state court had excluded the evidence based on the violation of the notice rule, and then the Supreme Court said, no decision of this court, quote, clearly establishes that the Constitution requires a case-by-case balancing of interests before such a rule can be enforced. Lucas did not even suggest, the court said, much less hold, that it is unconstitutional to enforce a rule unless a case-by-case balancing of interests weighs in favor of enforcement. No fair-minded jurist could think that Lucas clearly establishes that test. So there are two points to draw from the Jackson case. The first is that the rule Mr. Williams is advocating here was never clearly established. And second, it certainly isn't after Jackson. And it's also worth noting that to get the rule out of Taylor or Lucas that Mr. Williams is advocating requires a logical fallacy. Taylor's observation that lesser sanctions sometimes perpetuate harm does not clearly establish a rule that preclusion is impermissible in all other circumstances. Similarly with Lucas's statement that there could be circumstances in which preclusion is justified because a less severe penalty would perpetuate harm. That does not clearly establish a rule that preclusion is only justified in that circumstance. The Taylor and Lucas cases say if A then B, but what Mr. Williams wants to infer is only if A then B or if B then A. And that doesn't follow from the rule in Taylor and Lucas. In fact, it's a logical fallacy. It's called affirming the consequent. And it can't be a clearly established rule of Supreme Court precedent if a logical fallacy is required to get from the Supreme Court precedent to the rule. And we would note also that regardless of whether anything was clearly established in Taylor and Lucas, here the state court did impose a lesser sanction. The fact is that Williams disclosed his witness late in violation of the Michigan rule, but the witness was not automatically excluded. Instead, as the district court noted below, the deadline was moved. And the court had discretion at all times to reject the party's stipulation, but it didn't. Instead, it agreed and it said all right. And the witness still didn't make the new deadline. The state courts here did not ignore Williams's interest in offering witnesses in his favor. Instead, it tried to accommodate him. And the prejudice to the prosecution here was real. The prosecution needs lead time to figure out what the testimony is. And as this court has noted, the record is very unclear as to what the testimony even would have been. The prosecution needs time to investigate the factual circumstances of the witness's story, when the witness came forward, et cetera. The trial court moved the deadline once here. It wasn't required to continue moving the deadline. And I would also note that it's important to emphasize that there was suspicion here. The alibi was suspicious. At best, Williams's actions here and his counsel's actions were dilatory, but what's more likely, I think, is that the trial court was justifiably suspicious of this alibi. If Williams had a legitimate and viable alibi, if the defense attorney thought that, there's simply no way that the defense attorney would not have spoken with this alibi earlier than four days before trial. And there's no way that the defense attorney would have waited until two weeks before trial to even begin to try contacting the witness, which is what the record shows happened here. If the defense attorney really thought the alibi was legitimate, he could have requested an extension of the deadline. He didn't do that. He could have provisionally given notice of her while he waited to contact her. He didn't do that. These facts are telling because complying with the rule would have been simple if this were a legitimate alibi that had come forward within a reasonable amount of time, as you would expect with a legitimate alibi. And the notice rule, it's important to emphasize that the Taylor court said the notice rule protects not only against prejudice to the prosecutor, but it also protects the integrity of the adversary process itself. Taylor said that pretrial discovery rules minimize the risk of admitting testimony that is incomplete, misleading, or even deliberately fabricated. It quoted Williams v. Florida when it said that given the ease with which an alibi can be fabricated, the state's interest in protecting itself against an 11th-hour defense is both obvious and legitimate. And while Taylor agreed that less drastic sanctions are always available, it noted that they are not as effective at deterring dishonesty and that lesser sanctions are not always enough to deter a dishonest defendant who would be inclined to lie about the reason for failing to meet the notice rule. That's why the court in Taylor said that it's reasonable to presume an 11th-hour witness is suspect. The point is that sometimes the court is not going to know, and it won't be obvious whether the violation was willful or whether it's being fabricated at the last minute. That's why the Taylor court said it's reasonable to presume these witnesses are suspect, and this was suspect here. I would also... There's no claim in this record that counsel was willfully or blatantly violating the notice rule, correct? I agree that there was no... the prosecution didn't make that argument, but I also agree that... or I would also argue that the circumstances here were certainly suspicious, and as I... as I argued, if this witness were legitimate and the defense attorney thought she was strong, there's no way this scenario would have happened. She would have been lined up very early on in the process. Briefly, I'd also note that this court's decision in forensic does not control the outcome in this case. The first reason is that this case satisfies forensic. Forensic found that the state court decision unreasonably applied Supreme Court precedent because it didn't consider lesser sanctions. This court in forensic did not hold that the states were required to impose a lesser sanction, and here, Michigan did consider a lesser sanction. Indeed, the courts applied one. The second reason that forensic does not apply here or does not control the outcome is that forensic is completely distinguishable. In that case, the exclusion was held arbitrary and disproportionate, where there was no delay caused by the late disclosure. The prosecution did not claim prejudice. The trial court expressed indifference as to whether the prosecution was prejudiced. The state court of appeals nevertheless assumed prejudice, and the trial court excluded an eyewitness identification expert, even though the eyewitness identification was the only evidence linking the defendant to the crime, and the defense attorney there had promised the expert to the jury and was not allowed to explain why he didn't follow through on his promise. Those circumstances are completely distinguishable from this case. And third, the Nevada v. Jackson Supreme Court case came out in 2013, which postdates forensic, which was in 2007. Forensic quoted liberally from Lucas in arriving at a rule that resembles what Williams is advocating here, and the Supreme Court's decision in Nevada v. Jackson shows that that is not a clearly established rule, and it's certainly not one in the eyes of the Supreme Court. I would just note in closing that as the district court stated below, the state was willing to accept Mr. Williams' 11th hour defense, it just was not willing to extend the curfew to 1130. The trial court here did impose a lesser sanction. Williams has the burden of showing that no fair-minded jurist could disagree that the state court's decision was the opposite of a rule that was clearly established by the Supreme Court, and for the reasons that I've stated, he can't do that. If this court has no further questions, I would rest on the brief for the remaining issues. Judge Daughtry, any questions? No, thank you. Thank you, Counsel. Thank you. I'd like to make three points in rebuttal. First, Mr. Williams does not advocate a bright-liner categorical requirement that, as the clearly established federal rule upon which Mr. Williams relies, is that the exclusion of material witness testimony must not be arbitrary or disproportionate to the purposes that the discovery rule in question is designed to serve, that Taylor directs courts to balance certain factors, that those factors were not reflected in the Travis test, and also that, as Forensic recognized, the severity of the exclusion sanction is a relevant factor, a highly relevant factor in the proportionality analysis that is clearly established by federal law. Nevada v. Jackson did not directly abrogate Taylor or Forensic. Jackson involves a well-established general rule prohibiting, this is also in the federal rules of evidence, prohibiting the admission of extrinsic evidence for the purposes of impeachment. It did not address alibi witness testimony, which is a very weighty interest of the state. And Taylor explicitly rejected the state's proposed per se rule that it never violates the Sixth Amendment to exclude late notice alibi witness testimony. Taylor said, we cannot accept the state's argument that this constitutional right may never be offended by the imposition of a discovery sanction that entirely excludes the testimony of a material defense witness. Nevada v. Jackson did not mention Taylor or purport to overrule that clearly stated rejection of the per se rule proposed by the state. Finally, I'd like to point out that it's inaccurate to state that the trial court imposed a lesser sanction. The trial court was not even informed of the 3 o'clock deadline in court, so to the extent that the trial court could be said to have approved any deal made by the prosecution and the defense, the specific 3 o'clock deadline was not part of anything that was ratified by the court. But I would also point out that again, the relevant inquiry for the trial court was at the time that the alibi notice rule was fulfilled, when alibi notice was given 4 days before trial, what at that point was the proportionate sanction to impose? The trial court didn't make any findings of willfulness. The trial court certainly didn't make any finding that the witness was suspect or fabricated. It's clear that the defense had begun attempting to contact Ms. Peters well over 2 weeks before trial, and that the difficulty that the defense counsel had in reaching her was just a logistical fact and not evidence of any willful delay or manipulation of the discovery rules on the defense counsel's part. This court should reverse and remand with instructions to grant the writ. If you have no further questions, I'll get back to you for the rest of my time. Judge Autry? I don't have a question, but I would just like to say that I'm dubious about the fact that Mr. Williams could afford to have counsel from such a prestigious law firm representing him, and to thank Ms. Taylor for the work she undertook. Thank you, Judge. It's been a pleasure. I think that's absolutely right. These habeas cases are difficult, and when we have two counsel that do a really good argument, it's really very useful to us, and thank you both. Particularly you, Ms. Taylor, because you're appointed under the Civil Justice Act, so we appreciate that and Jones Day's  very much. Case will be submitted.